**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Zachir Devaugnte Shyhiim McCall, Appellant.

Appellate Case No. 2022-000921

———————

Appeal From Marion County
G. D. Morgan, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-174
Heard April 9, 2025 – Filed May 28, 2025

———————

**AFFIRMED**

———————

Appellate Defender Jordan Millen Wayburn, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, Assistant Attorney General William Joseph Maye, all of Columbia, and Edgar L. Clements, III, of Florence, all for Respondent.

———————

**PER CURIAM:** Zachir Devaugnte Shyhiim McCall appeals his convictions and sentences of thirty-five years' imprisonment for murder, ten years' imprisonment for armed robbery, and five years' imprisonment for possession of a weapon during the commission of a violent crime. On appeal, McCall argues the trial court erred by failing to suppress his second[1] statement to law enforcement because it was a product of coercive interrogation tactics. We affirm.

1. As an initial matter, we hold this issue is preserved for our review. The trial court ruled at the close of the pretrial *Jackson v. Denno*[2] hearing that McCall's statement to law enforcement was freely, voluntarily, and intelligently given. The trial court's clear ruling was final as a ruling on a constitutional issue. No new evidence related to the statement was introduced prior to the admission of the interrogation video that would cause the trial court to change its ruling. Moreover, the State and McCall referenced the interview in their opening statements; therefore, McCall was not required to make any further objection. *See State v. Jones*, 435 S.C. 138, 144, 866 S.E.2d 558, 561 (2021) (holding that when a court rules on a constitutional issue after a pretrial hearing, "the ruling is final and, unless something changes during trial that may reasonably cause the trial [court] to alter the pretrial ruling, no further objection is required to preserve the issue for appellate review"); *State v. Wiles*, 383 S.C. 151, 157, 679 S.E.2d 172, 175 (2009) (finding the defendant's argument was preserved for appeal because the trial court's pretrial ruling was final and the evidence in contention was referenced by the parties in their opening statements).

2. Based on the totality of the circumstances, we hold McCall's statement to law enforcement was voluntarily made. *See State v. Miller*, 441 S.C. 106, 119, 893 S.E.2d 306, 313 (2023) (explaining the appellate court "will review the trial court's factual findings regarding voluntariness for any evidentiary support" but the legal question of whether the statement was voluntarily made is subject to de novo review); *id.* at 120, 893 S.E.2d at 313 ("There are two constitutional bases requiring any confessions admitted into evidence to be voluntary: the Due Process Clause of the Fourteenth Amendment and the Fifth Amendment right against self-incrimination."); *State v. Saltz*, 346 S.C. 114, 136, 551 S.E.2d 240, 252 (2001) ("If a suspect's will is overborne and his capacity for self-determination critically impaired, use of the resulting confession offends due process."); *Miller*, 441 S.C. at

---

[1] McCall spoke with law enforcement on two occasions—first as a person of interest and then during a custodial interrogation after his arrest. However, McCall only challenges the admission of his second statement on appeal.

[2] 378 U.S. 368 (1964).

120, 893 S.E.2d at 314 ("Ultimately, the determination will depend 'upon a weighing of the circumstances of pressure against the power of resistance of the person confessing.'" (quoting *Dickerson v. United States*, 530 U.S. 428, 434 (2000))); *id.* at 120-21, 893 S.E.2d at 314 (explaining courts may consider a number of factors when determining voluntariness, including the defendant's education, a written waiver signed by the defendant regarding his constitutional rights, the defendant's mental health, the length and location of the interrogation, and whether law enforcement made specific promises of leniency); *id.* at 122, 893 S.E.2d at 314 ("None of these factors are dispositive in and of themselves; rather, they must be considered in their totality to determine whether the defendant's will was overborne.").

At the *Denno* hearing, Detective Greg Pike, of the Marion County Sheriff's Office, testified McCall voluntarily submitted to an interview with officers on April 21, 2020. He stated that at that time, McCall was only a person of interest, but he became a suspect in the investigation after making illogical statements during the interview. Pike recalled that on May 8, 2020, McCall was arrested and transported to the Marion County Detention Center. He asserted he did not initiate an interview because McCall initially declined to speak with officers. Pike explained he and Sheriff Brian Wallace only interviewed McCall after McCall sent the sheriff's office a grievance form indicating he was willing to speak to officers without an attorney present.

At the beginning of the interview, McCall signed a *Miranda* form indicating he understood and waived his constitutional rights. Pike asserted McCall did not appear to be under the influence of any substance or suffering from a mental defect. He further stated that he believed McCall's statement was voluntarily made. During cross-examination, Pike asserted he did not remember any statements he might have made to McCall during the walk to the booking area. Wallace testified he did not threaten to arrest McCall's pregnant girlfriend, Jasmine Blackwell, during the second interview, nor would he have encouraged other officers to make such threats. He explained that he questioned McCall about Blackwell's involvement in the murder because she owned the murder weapon and officers wanted to ensure she had no knowledge of the crime. Wallace further stated McCall never filed a grievance about any threats that were allegedly made.

Through our own review of the video, we note McCall did not appear to be under the influence of drugs or alcohol, he was coherent, and he voluntarily spoke to officers. McCall stated he could read and write and was a high school graduate. Pike read McCall his constitutional rights from a *Miranda* form; McCall followed

along on his own copy of the form and initialed that he understood each right and wished to speak to law enforcement. McCall was offered refreshments and asked if he needed to use the restroom. Although McCall proclaimed during the *Denno* hearing that he confessed to prevent Blackwell's arrest, officers interviewed McCall for over two hours before he confessed.

We note that while explaining what occurred the night of the murder, McCall told officers he was carrying Blackwell's firearm when he met with Victim and put Blackwell's firearm back in its proper place after the incident. Wallace then proceeded to question McCall about Blackwell's involvement in the murder for the first time, saying, "You bring the thing up with your baby mama was . . . your baby mama is the one to the eight-month-old? That's the baby you're talking about? Here's what I don't want to see happen. And that's what we want to get from you. I don't want . . . you see where I'm going?". *Cf. State v. Corns*, 310 S.C. 546, 549-51, 426 S.E.2d 324, 325-27 (Ct. App. 1992) (explaining the defendant's confession was involuntary when it was given only *after* the interviewing officer threatened the defendant's wife and children). It is questionable whether Wallace's statement was a threat because this was the only statement Wallace made that concerned Blackwell and he did not mention her by name. We further note that there is no evidence of any discussion of Blackwell during booking except McCall's own testimony that Pike informed him during the walk to the booking area that Blackwell would be arrested for accessory after the fact to murder. However, McCall admitted to lying in his first statement, and he initially gave several versions of his story in the second interview, undermining his credibility. Ultimately, we find no evidence of coercion.

Accordingly, considering the totality of the circumstances surrounding McCall's statement, we believe McCall's will was not overborne and his statement was voluntarily made.

**AFFIRMED.**

**WILLIAMS, C.J., and GEATHERS and TURNER, JJ., concur.**